**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| DAVID S. RAY, individual and on behalf of other similarly situated persons, | CIVIL ACTION |
| Plaintiff(s), | COMPLAINT  5:19-cv-01295 |
| v. | JURY TRIAL DEMANDED |
| THE VILLA GROUP, INC. RESORTCOM INTERNATIONAL, LLC, MONTEREY FINANCIAL SERVICES, LLC, | |
| Defendants. | |

**COMPLAINT**

**NOW COMES** David S. Ray by and through his attorney, Alexander J. Taylor, complaining as to the conduct of The Villa Group, Inc., ResortCom International, LLC and Monterey Financial Services, LLC as follows:

**I.     Nature of the Action, Jurisdiction, Parties and Venue**

1.      Plaintiff David S. Ray ("Plaintiff") brings this action seeking redress for violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. § 1692, violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. § 227, and violations of the Texas Debt Collection Act ("TDCA") pursuant to Tex. Fin. Code Ann. § 392.

2.      Subject matter jurisdiction is conferred upon this Court by the FDCPA, the TCPA, and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3.      Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

4.      Plaintiff is a natural person over 18-years-of-age who is a "consumer" as the term is defined by 15 U.S.C § 1692a(3).

5.      Plaintiff is a citizen of St. Petersburg, Florida.

6.      Plaintiff is a "person" as defined by 47 U.S.C. §153(39).

7.      At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, possessor, and operator of his cellular phone number (830) 358-6700.

8.      Defendant Villa Group Inc. ("Villa") is in the business of selling timeshares.

9.      Villa is incorporated in the State of Delaware.

10.     Villa's registered agent, The Company Corporation, is located at 251 Little Falls Drive, Wilmington, Delaware 19808.

11.     Villa's principal office is located at 6850 Bermuda Road, Las Vegas, Nevada 89119.

12.     Villa is a "person" as defined by 47 U.S.C. §153(39).

13.     ResortCom International, LLC ("ResortCom") "provides timeshare management software and financial services to the timeshare and vacation ownership industry" according to its website, www.corporate.resort.com

14.     ResortCom is incorporated in the State of Nevada.

15.     ResortCom's principal office is located at 6850 Bermuda Road, Las Vegas, Nevada 89119.

16.     ResortCom's registered agent, Resident Agents of Nevada, Inc., is located at 711 South Carson Street, Suite 4, Carson City, Nevada 89701.

17.     Defendant Monterey Financial Services, LLC ("Monterey") is a California limited liability company.

18.     Monterey's agent for service of process, Nate Lucas, is located at 4095 Avenida De La Plata, Oceanside, California 92056.

19.     As reflected on Monterey's website, https://www.montereyfinancial.com, Monterey "is a full service receivables management and finance company."

20.     Monterey is a "person" as defined by 47 U.S.C. §153(39).

21.     Monterey is a "debt collector" as defined by the FDCPA because it collects or attempts to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others using the mail and telephone, including consumers in the State of Texas.

22.     Defendants acted through their agents, brands, employees, officers, members, directors, heirs, successors, assigns, third-party contractors, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

23.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business and maintain significant business contacts in the Western District of Texas, and a substantial portion of the events or omissions giving rise to the claims occurred within the Western District of Texas. For example, one or more of the Defendants called Plaintiff while Plaintiff resided in Texas.  Second, Monterey sent letters and emails to Plaintiff's residential address which was located within this District. Third, Plaintiff invoked his legal right to revoke the subject timeshare contract from within this District.

**II.     Facts Supporting Causes of Action**

24.     Prior to the conduct giving-rise to these claims, Plaintiff took a vacation at Villa Del Palmar Resort (the "Villa Resort"), a property owned by or associated with Villa.

25.     During Plaintiff's stay at the Villa Resort, he was offered a "tour" by a person who held himself to be an employee of the Villa Resort.

26.     During the tour, which took place on or about September 2, 2016, Plaintiff was provided with free alcoholic drinks by the employee and other persons who presented themselves as employees of Villa Resort.

27.     At  the commencement of the tour, the employee in question encouraged Plaintiff to continue to consume alcoholic beverages during the tour.

28.     After the "tour", the employee turned the so-called "tour" into a passionate sales pitch to induce Plaintiff to purchase a timeshare.

29.     Plaintiff was then taken to a salesroom where the employee continued offering Plaintiff more drinks that were alcoholic.

30.     The salesroom had five to six table and a mini bar with a waiter handing out drinks to Plaintiff and other guests.

31.     Each table had different guests who were offered similar timeshares.

32.     Plaintiff was told that he could only purchase a timeshare while he was at the resort. Plaintiff was told that he if he purchased a timeshare while staying at the Resort he would be given a reasonable amount of time to revoke his time share.

33.     According to website postings by Villa, persons who purchase timeshares are afforded between seven (7) to fourteen (14) days to revoke their purchase.

34.     After being treated "like royalty" by all staff members during the "tour," and after his thought process was negatively impacted by the consumption of alcohol, Plaintiff felt like he was "talked" into signing a contract sign to purchase a timeshare.

35.     Based upon his consumption of alcohol and the friendly, but increasingly firm "sales pitch" pressure exerted on him by staff, Plaintiff signed a contract with Villa to purchase the subject timeshare while he was intoxicated.

36.     After signing the contract, Plaintiff received a "free" bottle of champagne.

37. The "tour" that turned into an intense "sales pitch" failed to explain to Plaintiff that the actual contract for the subject timeshare would contains thousands of dollars of hidden fees, interest related charges and expenses.

38. Before Plaintiff signed the contract, he was never told that the contract contained these hidden fees and other expenses.

39. At the conclusion of the on September 2, 2016, sales pitch, Plaintiff was instructed to apply for a Bank of American, N.A. ("BOA") issued credit card, identified as an "International Visa Signature credit card with WorldPoints rewards from Bank of America" (the BOA Credit Card).

40. The BOA Credit Card had a pre-approved spending amount of $4,000, and Plaintiff applied for the card at the suggestion of the salesperson.

41. Thereafter, on September 2, 2016, Plaintiff was charged a down payment of $4,000 towards the purchase of the subject timeshare.

42. Additionally, on September 2, 2016, Plaintiff was charged a second down payment of $10,908.75 towards the purchase of the subject timeshare where the "Merchant Name", the presumed creditor for the contract, was identified as VDP Cancun DP-CLT.

43. As detailed below collection letters and emails sent by Monterey to Plaintiff referred to a different "clients", a generically identified "Villa Group" and "Villa Group VDP-VDM".

44. This payment was documented by a "ResortCom credit card authorization voucher" that was prepared and presented on ResortCom International letterhead.

45. ResortCom "is an authorized agent for Seller", a Mexican company known as Constructora Villa del Palmar Cancun, S.A. de C.V. (hereafter "Constructora").

46.     After making the two down payments, Plaintiff (based upon his intoxicated status) was unsure of how the remaining balance ("Subject Debt") had been calculated.

47.     Thereafter, Plaintiff returned to the United States on September 5, 2016.

48.     After Plaintiff returned to the United States, he recognized that the contract included hidden fees and expenses.

49.     Plaintiff reasonably believed the contract was invalid because of the hidden fees and expenses.

50.     Thereafter, Plaintiff attempted to revoke the contract.

51.     Plaintiff called Villa and informed it that the contract was not valid and Plaintiff will no longer make payments on the subject debt.

52.     Villa refused to accept Plaintiff's revocation of the contract and badgered him to collect the amounts previously owed.  On information and belief, Plaintiff recalls being told that the applicable "cooling off" period that applied to the timeshare contract had explained.

53.     In or around February 2019, Plaintiff lost his job and shortly after this happened, Plaintiff began receiving collection calls from Villa to his cellular telephone.

54.     During these calls, an employee or agent of Villa informed Plaintiff that Villa was seeking to collect payments.

55.     Plaintiff explained to Villa that he did not owe the Subject Debt because Villa deceived him into signing the contract and the contract was no longer valid after Plaintiff had revoked the contract.

56.     During more than one call, Plaintiff attempted to explain that he did believe that the contract was valid.

57.     During these calls, Plaintiff demanded that Villa stop calling him and that he did not owe Villa any money.

58.     Villa called Plaintiff from numbers with a Las Vegas, Nevada area code, 800 area code, and numbers with a Mexico area code.

59.     The numbers that Villa most often used to call Plaintiff were (702) 415-9960 and (888) 688-5164, but upon information and belief, Villa may have used other numbers to call Plaintiff.

60.     Villa called Plaintiff multiple times a day and on back-to-back days.

61.     Alternatively, ResortCom placed the above identified calls as an agent for Constructora.

62.     Despite Plaintiff demanding that Villa stop calling him, Villa continued to harass Plaintiff by calling his cellular telephone in an attempt to get Plaintiff to pay the Subject Debt.

63.     Alternatively, to the extent that ResortCom was calling Plaintiff, as an agent of Constructora, ResortCom continued to call Plaintiff in an attempt to harass Plaintiff by calling his cellular telephone in an attempt to get Plaintiff to pay the Subject Debt.

64.     In the calls Plaintiff answered, he observed a noticeable period of "dead air" and a pre-recorded message while Villa's telephone system attempted to connect Plaintiff to a live agent.

65.     In the calls Plaintiff answered, he also heard what sounds to be call center noise in the background of Villa's collection calls.

66.     Upon information and belief, Villa placed its calls to Plaintiff's cellular telephone using a form of an automated telephone dialing system.

67.     Sometime thereafter, Villa or ResortCom stopped calling Plaintiff and Plaintiff believed that whomever was calling him finally realized that he did not owe the Subject Debt.

7

68.    But as reflected below, it now appears that Villa, ResortCom, Constructora, or some other entity who may own the Subject Debt placed Plaintiff's account in default status and assigned it to Monterey for collections.

69.    Plaintiff received an email from Monterey dated April 15, 2019, (the "April 15th Email") where the April 15th Email evidenced Monterey's attempt to collect a consumer debt allegedly owed by Plaintiff to "Villa Group VDP-VDM" and listed "Contract No.: 17-26068-1."

70.    Monterey's April 15th Email did not identify Constructora as the creditor of the Subject Debt.

71.    Constructora, upon information and belief, as evidenced by certain document tendered to Plaintiff by Monterey, was original creditor and the original holder of a note that forms the basis for Defendants' debt collection at the time that Monterey sent the April 15th Email to Plaintiff.

72.    The April 15th Email listed "Villa Group VDP-VDM" as the "client," identified an account number ending in 024008, identified a contract number ending in 068-1 and listed a "Balance Due" as $42,453.88.

73.    Purported "Balance Due" included "[i]nterest" in the amount of $3,476.79 and $204.00 in unspecified "[f]ees."

74.    The April 15th Email did not indicate whether interest was continuing to accrue.

75.    The April 15th Email stated, "Monterey Financial will accept the above stated balance in full satisfaction of the debt if payment is received by 04/20/2019."

76.    Plaintiff was confused to see that previously unknown company named Villa Group VDP-VDM was claiming that he allegedly owed the Balance Due.

77.     The April 15th Email violated Section 1692g(a)(2) by failing to "name the creditor to whom the debt is owed" if Villa Group VDP-VDM did not own the debt on April 15, 2019.

78.     Around the same time Plaintiff received April 15th Email, Monterey began to call Plaintiff's cellular telephone number.

79.     Immediately after Monterey began to call Plaintiff, Plaintiff told Monterey that he does not owe the debt and demanded that Monterey cease calling him.

80.     Monterey's phone calls to Plaintiff's cellular telephone began with "dead air" then a pre-recorded message.

81.     Upon information and belief, Monterey placed its calls to Plaintiff's cellular telephone using a form of an automated telephone dialing system.

82.     Plaintiff was shocked to have Monterey call him because he had told Villa and presumably ResortCom to stop calling him.

83.     It is plausible that Monterey obtained Plaintiff's cellular phone number from Villa or ResortCom.

84.     It is well known that the debt collection industry uses automated telephone dialing system to collect defaulted debts.

85.     In the calls Plaintiff answered, Plaintiff was greeted by a noticeable period of "dead air" and a pre-recorded message while Monterey's telephone system attempted to connect Plaintiff to a live agent.

86.     Plaintiff also heard what sounds to be call center noise in the background of Monterey's collection calls.

87.     The phone number that Monterey most often used to contact Plaintiff is (877)775-3091, but upon information and belief, Monterey used other numbers to contact Plaintiff.

88.     On May 16, 2019, Monterey send Plaintiff a letter that said "[i]n response to your request, and pursuant to the debt validation requirements set for in the Fair Debt Collection Practices Act, please find enclose the necessary proof of debt." (hereafter the "May 16th Validation Response").

89.     Monterey's May 16th Validation Response listed the "Client" as Villa Group, in contrast to the April 15th 2019 email which listed Villa Group VDP-VDM.

90.     Monterey's misidentification of the creditor in this manner violated Sections 1692e(2)(A), 1692e(10) and 1692f.

91.     Monterey's May 16th Validation Response, like its April 15th 2019 email referred to "Contract No.: 17-26068-1". However, the enclosed documents referred to different contract and/or loan numbers.  Plaintiff was confused by the different contract and loan reference numbers that we identified in the attachments to Monterey's May 16th Validation Response.

92.     The documents attached to Monterey's May 16th Validation Response referred to two different so-called "SPI Contract #" numbers, a so-called "New Contract #" number, and "Previous Contract" numbers.  These references confused Plaintiff further because they were all different numbers.

93.     Adding to Plaintiff's confusion was the fact that certain documents referred to ResortCom and a different "contract numbers".

94.     Further, Plaintiff was confused to see a "Merchant Name" of "VDP Cancun DP-CLT".  This reference further confused Plaintiff.

95.     Further, Constructora, upon information and belief, was the original creditor and the original holder of a note that forms the basis for Defendants' debt collection at the time that Monterey sent the April 15th Email to Plaintiff, as evidenced by Monterey's provision of a purported "Promissory Note and Security Agreement",

10

"Membership Purchase and Security Agreement", "Amendment to Membership Purchase and Security Agreement" and Exhibits B, C and D to the tendered to the purported "Membership Purchase and Security Agreement" to Plaintiff as part of the document emailed to Plaintiff as part of Monterey's May 16th Validation Response.

96.   At the time that Monterey transmitted the May 16th Validation Response to Plaintiff, Monterey failed to provide Plaintiff with any documents that demonstrated that Constructora was no longer the creditor or note holder of the subject debt.

97.   At the time, that Monterey transmitted the May 16th Validation Response to Plaintiff, Monterey failed to provide Plaintiff with any documents that identified whether Constructora had sold the Subject Debt to any other entity.

98.   At the time that Monterey transmitted the May 16th Validation Response to Plaintiff, Monterey failed to provide Plaintiff with any documents that identified any documents to evidence how "Villa Group VDP-VDM", as the "Client" identified in the April 15th Email, was the current creditor of the Subject Debt.

99.   To date, Monterey has failed to provide Plaintiff with any documents to evidence how and whether "Villa Group", is the current creditor of the Subject Debt.

100.   To date, Monterey has failed to provide Plaintiff with any documents to evidence how and whether "VDP Cancun DP-CLT", is the current creditor of the Subject Debt.

101.   To date, Defendants have not provided Plaintiff with any documents that show that Constructora is no longer the creditor or note holder of the subject debt.

102.   To date, Defendants have not provided Plaintiff with any documents that identify how any entity other than Constructora is the current creditor or note holder of the subject debt.

103.   On information and belief, Monterey has sent more than 40 similar letters to individuals in the United Stated and this judicial district where Monterey's collection letters did not properly identify Constructora the current creditor or where Monterey's letters improperly listed Villa Group and/or VDP Cancun DP-CLT as the client/creditor when neither were.   This conduct would violate Sections 1692e(2)(A), 1692e(10) and 1692f of the FDCPA.

104.   As explained in Count VI and VII, Plaintiff's claims are typical of putative class members and Monterey's conduct satisfies the elements of commonality, a class action a superior method to resolve Monterey's misconduct and the putative class members can be identified by Monterey's internal records and copies of letters that were sent with similar errors.

105.   Collectively, because of the various contract numbers that were identified in the documents produced by Monterey's May 16th Validation Response, Monterey did not effectively or meaningfully constitute "verification of the debt"  as contemplated by Section 1692g of the FDCPA and as indicated in Monterey's April 15th Email.

106.   Collectively, because of the numerous entities that were identified in the documents produced by Monterey's May 16th Validation Response, Monterey did not effectively or meaningfully "provide [Plaintiff] with the name and address of the original creditor, if different from the current creditor" as contemplated by Section 1692g of the FDCPA and as indicated in Monterey's April 15th Email.

107.   On information and belief, Monterey has sent more than 40 similar Validation Response letters to individuals in the United Stated and this judicial district where Monterey's collection letters did not properly identify Constructora the current creditor or where Monterey's Validation Response letters improperly listed VDP Cancun DP-CLT as the client/creditor and the Validation Response letters failed (as was the case

with Plaintiff) to explain how Villa Group or VDP Cancun DP-CLT as the client/creditor. This conduct would violate Sections 1692e(2)(A), 1692e(10) and 1692g(a)(2) of the FDCPA.

108.    As explained in Count VI, VII, and VIII, Plaintiff's claims are typical of putative class members and Monterey's conduct satisfies the elements of commonality, a class action a superior method to resolve Monterey's misconduct and the putative class members can be identified by Monterey's internal records and copies of letters that were sent with similar errors.

109.    By continuing to place calls to Plaintiff's cellular telephone in an attempt to collect on the Subject Debt and by failing to take any proper steps to effectively validate the Subject Debt and identify the actual creditor, Monterey's collection calls constituted harassment.

110.    On June 4, 2019, Monterey reported the Subject debt on Plaintiff's TransUnion credit report.

111.    On June 8, 2019, Monterey reported the Subject Debt on Plaintiff's Experian credit report.

112.    Despite receiving and later acknowledging Plaintiff's May 6th Dispute Letter Monterey reported the Subject debt on Plaintiff's Experian credit report.

113.    At no point prior to the filing of this lawsuit did Monterey effectively validate the Subject Debt and identify the actual creditor.

114.    At no point prior to the filing of this lawsuit did Monterey cease collection efforts until the Subject Debt was properly validated or by properly identifying the actual creditor.

115.    Monterey called Plaintiff's cellular telephone from May 2019 through the present day, without properly validating the Subject Debt or by properly identifying the actual creditor.

116.    Plaintiff is a "consumer" as defined by FDCPA § 1692a(3).

117.    The alleged Subject Debt is a "debt" as defined by FDCPA § 1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

118.    Monterey is a "debt collector" as defined by § 1692a(6) because its primary business is the collection of delinquent debts and it regularly collects debts and uses the mail and/or the telephones to collect delinquent accounts allegedly owed to a third party.

119.    Monterey is a "debt collector" because it acquired rights to the Subject Debt after it was in default. 15 U.S.C. § 1692a(6).

120.    Monterey used the telephone to attempt to collect the Subject Debt and, as such, engaged in "communications" as defined in FDCPA § 1692a(2).

121.    Monterey's communications to Plaintiff were made in connection with the collection of the Subject Debt.

122.    Monterey violated 15 U.S.C. §§ 1692c(a)(1), d, d(5), e, f, g(a)(2) and g(b) through its unlawful debt collection practices.

123.    Concerned about the violations of his rights and invasion of his privacy, Plaintiff was forced to seek the assistance of counsel to file this action to compel Defendants to cease its unlawful conduct.

**Count I - Violations of § 1692c of the FDCPA v. Monterey**

124.    Plaintiff realleges the above paragraphs as though fully set forth herein.

125.   Monterey violated Section 1692c(a)(1) of the FDCPA when it continuously called Plaintiff after he told Monterey's agents and/or employees to stop calling him.

126.    Monterey's repeated behavior of systematically calling Plaintiff's cellular telephone over and over even after he told Monterey's agents and/or employees to stop calling him and failing to properly respond to Plaintiff's May 6th Dispute Letter was harassing and abusive.

127.   Plaintiff's May 6th Dispute Letter notified Monterey that its collections efforts were not welcomed.  As such, Monterey knew that its conduct was ill-timed and inconvenient to Plaintiff.

128.   Further, Monterey was obligated to cease its collection efforts until it properly validated the Subject Debt and the actual creditor.

129.   Monterey failed to stop calling Plaintiff's cellular telephone and unfairly harassed Plaintiff with these calls after failing to properly validate the Subject Debt and the actual creditor.

130.   Monterey's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

131.   Plaintiff has expended time consulting with his attorneys as a result of Monterey's unfair, deceptive, and misleading actions.

132.   Plaintiff was unduly disrupted and harassed by Monterey's unlawful attempts to collect the Subject Debt.

133.   Monterey's phone harassment operation and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity.

134.   Monterey's phone calls wasted Plaintiff's time.

135.   Monterey's phone calls caused Plaintiff aggravation.

136.   Monterey's phone calls caused Plaintiff emotional distress, anxiety, loss of concentration.

137.   Monterey's conduct caused Plaintiff emotional distress, anxiety, loss of concentration.

138.   Monterey's phone calls to Plaintiff diminished the value and utility of Plaintiff's telephone equipment and telephone subscription services, debilitating Plaintiff's voicemail capacity, the wear and tear caused to his cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully requests that this Honorable Court:

 a.   Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

 b.   Enjoin Defendant Monterey from contacting Plaintiff;

 c.   Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

 d.   Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

 e.   Award any other relief as the Honorable Court deems just and proper.

## Count II - Violations of § 1692d of the FDCPA vs. Monterey

139.   Plaintiff realleges the above paragraphs as though fully set forth herein.

140.   Monterey violated Section 1692d by engaging in abusive, harassing, and oppressive conduct by persistently calling Plaintiff's cellular phone seeking payment on the Subject Debt after he told Monterey's agents and/or employees to stop calling him.

141.   Monterey continued placing harassing collection calls to Plaintiff's cellular telephone after receiving Plaintiff's May 6th Dispute Letter and Monterey failed to properly validate the Subject Debt and the actual creditor.

142.   Monterey knew that it had to cease its collection efforts until it properly validated the Subject Debt.

143.   Rather than ceasing its collection efforts, Monterey continued to place harassing phone calls to Plaintiff's cellular telephone in an attempt to collect the Subject Debt.

144.   Monterey violated Section 1692d(5) by causing Plaintiff's cellular telephone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of the subject debt.

145.   Monterey intended to annoy, abuse, or harass Plaintiff into paying the Subject Debt by placing the calls mentioned above.

146.   Specifically, Monterey placed or caused to be placed numerous harassing phone calls to Plaintiff's cellular phone using an automated telephone dialing system without Plaintiff's consent and after receiving Plaintiff's May 6th Dispute Letter.

147.   Monterey was obligated to cease its collection efforts until it properly validated the Subject Debt and properly identified the actual creditor.

148.   Monterey failed to stop calling Plaintiff's cellular telephone, unfairly harassed Plaintiff with these calls after failing to properly validate the Subject Debt, and after failing to properly identify the actual creditor.

149.   Monterey's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

150.   Plaintiff has expended time consulting with his attorneys as a result of Monterey's annoying, abusive, and harassing actions.

151.   Plaintiff was unduly disrupted and harassed by Monterey's unlawful attempts to collect the Subject Debt.

152.   Monterey's phone harassment operation and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity.

153.   Monterey's phone calls wasted Plaintiff's time.

154.   Monterey's phone calls caused Plaintiff aggravation.

155.   Monterey's phone calls caused Plaintiff emotional distress, anxiety, loss of concentration.

156.   Monterey's conduct caused Plaintiff emotional distress, anxiety, loss of concentration.

157.   Monterey's phone calls to Plaintiff diminished the value and utility of Plaintiff's telephone equipment and telephone subscription services, debilitating Plaintiff's voicemail capacity, the wear and tear caused to his cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully requests that this Honorable Court

    a.   Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    b.   Enjoin Defendant Monterey from contacting Plaintiff;

    c.   Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

    d.   Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

    e.   Award any other relief as the Honorable Court deems just and proper.

**Count III - Violations of § 1692e of the FDCPA vs. Monterey**

158.    Plaintiff realleges the above paragraphs as though fully set forth herein.

159.    Section 1692e of the FDCPA generally prohibits a debt collector from using, "false, deceptive, or, misleading representation or means in connection with the collection of any debt."

160.    Monterey violated Section 1692e of the FDCPA when it continued to call Plaintiff's cellular telephone after he told Monterey's agents and/or employees to stop calling him and after Monterey received Plaintiff's May 6th Dispute Letter and Monterey

161.    By continuing to call Plaintiff's cellular telephone after  Plaintiff told Monterey's agents and/or employees to stop calling him, Monterey attempted to mislead Plaintiff into believing that it could continue collection efforts.

162.    Further, Monterey was obligated to cease its collection efforts until it properly validated the Subject Debt and to properly identified the actual creditor.

163.    Monterey failed to stop calling Plaintiff's cellular telephone and unfairly harassed Plaintiff with these calls after failing to properly validate the Subject Debt and after failing to properly identify the actual creditor.

164.    Monterey's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

165.    Plaintiff has expended time consulting with his attorneys as a result of Monterey's unfair, deceptive, and misleading actions.

166.    Plaintiff was unduly disrupted and harassed by Monterey's unlawful attempts to collect the Subject Debt.

167.    Monterey's phone harassment operation and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity.

168.   Monterey's phone calls wasted Plaintiff's time.

169.   Monterey's phone calls caused Plaintiff aggravation.

170.   Monterey's phone calls caused Plaintiff emotional distress, anxiety, loss of concentration.

171.   Monterey's conduct caused Plaintiff emotional distress, anxiety, loss of concentration.

172.   Monterey's phone calls to Plaintiff diminished the value and utility of Plaintiff's telephone equipment and telephone subscription services, debilitating Plaintiff's voicemail capacity, the wear and tear caused to his cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully requests that this Honorable Court:

a.   Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.   Enjoin Defendant Monterey from contacting Plaintiff;

c.   Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d.   Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e.   Award any other relief as the Honorable Court deems just and proper.

**Count IV - Violations of § 1692f of the FDCPA vs. Monterey**

173.   Plaintiff realleges the above paragraphs as though fully set forth herein.

174.   Section 1692f of the FDCPA specifically prohibits a debt collector from "us[ing] any unfair or unconscionable means to collect or attempt to collect any debt."

175.     Monterey violated Section 1692f of the FDCPA by unfairly calling Plaintiff's cellular telephone after he told Monterey's agents and/or employees to stop calling him.

176.     Further, Monterey was obligated to cease its collection efforts until it properly validated the Subject Debt.

177.     Monterey failed to stop calling Plaintiff's cellular telephone and unfairly harassed Plaintiff with these calls after failing to properly validate the Subject Debt.

178.     Monterey's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

179.     Plaintiff has expended time consulting with his attorneys as a result of Monterey's unfair, deceptive, and misleading actions.

180.     Plaintiff was unduly disrupted and harassed by Monterey's unlawful attempts to collect the Subject Debt.

181.     Monterey's phone harassment operation and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity.

182.     Monterey's phone calls wasted Plaintiff's time.

183.     Monterey's illegal conduct wasted Plaintiff's time.

184.     Monterey's phone calls caused Plaintiff aggravation.

185.     Monterey's phone calls caused Plaintiff emotional distress, anxiety, loss of concentration.

186.     Monterey's conduct caused Plaintiff emotional distress, anxiety, loss of concentration.

187.     Monterey's phone calls to Plaintiff diminished the value and utility of Plaintiff's telephone equipment and telephone subscription services, debilitating Plaintiff's voicemail capacity, the wear and tear caused to his cellular telephone, the loss

of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Enjoin Defendant Monterey from contacting Plaintiff;

c. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k; and

e. Award any other relief as the Honorable Court deems just and proper.

## Count V - Violations of § 1692g of the FDCPA vs. Monterey

188. Plaintiff realleges the above paragraphs as though fully set forth herein.

189. Section 1692g(b) of the FDCPA states:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

190. On May 9, 2019, Monterey received Plaintiff's May 6th Dispute Letter.

191.    After receiving Plaintiff's May 6th Dispute Letter, Monterey was obligated to verify the Subject Debt and cease its collection efforts.

192.    Monterey violated Section 1692g(b) of the FDCPA by not properly validating the Subject Debt and continuing to harass Plaintiff with collection calls to his cellular telephone.

193.    As pled above, Plaintiff was severely harmed by Monterey's conduct.

194.    As an experienced debt collector, Monterey knew or should have known the ramifications of placing debt collection calls to Plaintiff after it received Plaintiff's May 6th Dispute Letter.

195.    Upon information and belief, Monterey systematically places unsolicited and harassing debt collection calls to consumers in Texas in order to aggressively collect debts in default to increase its profitability at the consumers' expense.

196.    Upon information and belief, Monterey has no system in place to document and archive valid revocation of consent by consumers.

**WHEREFORE**, Plaintiff DAVID S. RAY requests that this Honorable Court:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  Enjoin Defendant Monterey from contacting Plaintiff;

c.  Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d.  Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e.  Award any other relief as the Honorable Court deems just and proper.

**Count VI – Class Action Based Violations of § 1692e of the FDCPA vs. Monterey**

197.    Plaintiff realleges the above paragraphs as though fully set forth herein.

198.    Monterey's misidentification of the creditor violates Sections 1692e(2)(A), 1692e(10).

23

199.   Monterey's May 16th Validation Response misleadingly listed the "Client" as Villa Group, in contrast to the April 15th 2019 email which listed Villa Group VDP-VDM.

200.   On information and belief, Monterey has sent more than 40 similar letters to individuals in the United Stated and this judicial district where Monterey's collection letters did not properly identify Constructora the current creditor or where Monterey's letters improperly listed Villa Group and/or VDP Cancun DP-CLT as the client/creditor when neither were.

201.   On information and belief, Monterey has sent more than 40 similar Validation Response letters to individuals in the United Stated and this judicial district where Monterey's collection letters did not properly identify Constructora the current creditor or where Monterey's Validation Response letters improperly listed VDP Cancun DP-CLT as the client/creditor and the Validation Response letters failed (as was the case with Plaintiff) to explain how Villa Group or VDP Cancun DP-CLT as the client/creditor.

202.   The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who were mailed letters from Monterey, where Monterey's letters did not properly identify Constructora as the current creditor or where Monterey's letters improperly listed Villa Group and/or VDP Cancun DP-CLT as the client/creditor when neither were.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully requests that this Honorable Court

a.   Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.   Enjoin Defendant Monterey from contacting Plaintiff;

c.   Award class members actual damages if they paid their subject debts after receiving misleadinf letters from Monterey;

d.   Award class members maximum statutory damages;

e. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

f. Award any other relief as the Honorable Court deems just and proper.

**Count VII – Class Action Based Violations of § 1692f of the FDCPA vs. Monterey**

203.   Plaintiff realleges the above paragraphs as though fully set forth herein.

204.   Monterey's misidentification of the creditor violates Sections 1692e(2)(A), 1692e(10).

205.   Monterey's May 16th Validation Response listed the "Client" as Villa Group, in contrast to the April 15th 2019 email which listed Villa Group VDP-VDM.

206.   Monterey used such unfair practices in order to confuse least sophisticated consumers like Plaintiff.

207.   On information and belief, Monterey has sent more than 40 similar letters to individuals in the United Stated and this judicial district where Monterey's collection letters did not properly identify Constructora the current creditor or where Monterey's letters improperly listed Villa Group and/or VDP Cancun DP-CLT as the client/creditor when neither were.

208.   On information and belief, Monterey has sent more than 40 similar Validation Response letters to individuals in the United Stated and this judicial district where Monterey's collection letters did not properly identify Constructora the current creditor or where Monterey's Validation Response letters improperly listed VDP Cancun DP-CLT as the client/creditor and the Validation Response letters failed (as was the case with Plaintiff) to explain how Villa Group or VDP Cancun DP-CLT as the client/creditor.

209.   The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who were mailed letters from Monterey, where Monterey's letters did not properly identify Constructora as the current creditor or where Monterey's letters improperly listed Villa Group

and/or VDP Cancun DP-CLT as the client/creditor when neither were.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully requests that this Honorable Court

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Enjoin Defendant Monterey from contacting Plaintiff;

c. Award class members actual damages if they paid their subject debts after receiving misleading letters from Monterey;

d. Award class members maximum statutory damages;

e. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

f. Award any other relief as the Honorable Court deems just and proper.

## Count VIII – Violations of § 1692g of the FDCPA vs. Monterey

210. Plaintiff realleges the above paragraphs as though fully set forth herein.

211. On May 9, 2019, Monterey received Plaintiff's May 6th Dispute Letter.

212. After receiving Plaintiff's May 6th Dispute Letter, Monterey was obligated to verify the Subject Debt and cease its collection efforts.

213. Monterey violated Section 1692g(b) of the FDCPA by not properly validating the Subject Debt.

214. On information and belief, Monterey has sent more than 40 similar Validation Response letters to individuals in the United Stated and this judicial district where Monterey's collection letters did not properly identify Constructora the current creditor or where Monterey's Validation Response letters improperly listed VDP Cancun DP-CLT as the client/creditor and the Validation Response letters failed (as was the case with Plaintiff) to explain how Villa Group or VDP Cancun DP-CLT as the client/creditor.

215. The proposed class members who are defined as follows:

> All persons with mailing addresses within this District who
> were mailed Validation Response letter from Monterey, where
> Monterey's Validation Response letters failed to explain how
> Villa Group or VDP Cancun DP-CLT as the client/creditor.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully requests that this Honorable Court

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Enjoin Defendant Monterey from contacting Plaintiff;

c. Award class members actual damages if they paid their subject debts after receiving misleading letters from Monterey;

d. Award class members maximum statutory damages;

e. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

f. Award any other relief as the Honorable Court deems just and proper.

## Count IX -   Individual claims vs. Monterey for Violations of the TCPA For Autodialed Calls

216.    Plaintiff realleges the above paragraphs as though fully set forth herein.

217.    Monterey repeatedly called Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") without Plaintiff's prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

218.    The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

219.    Upon information and belief, based on Monterey's lack of prompt human response and the playing of pre-recorded voice messages during the phone calls in which Plaintiff answered, Monterey used an ATDS to place calls to Plaintiff's cellular telephone.

220.    Further, because Monterey left pre-recorded voice messages in a voicemail box assigned to Plaintiff's cellular telephone number, it is plausible that Monterey used

an ATDS to cause the pre-recorded voice messages in a voicemail box assigned to Plaintiff's cellular telephone number.

221.    Upon information and belief, the ATDS employed by Monterey transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

222.    Monterey violated the TCPA by placing numerous phone calls to Plaintiff's cellular phone between May 2019 and the present day, using an ATDS without his prior consent.

223.    Any prior consent, if any, was revoked by Plaintiff's revocation. Specifically, Plaintiff sent Monterey the May 6th Dispute Letter.

224.    Therefore, Monterey knew that its calls to Plaintiff's cellular telephone were unwelcome and illegal.

225.    Monterey's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

226.    Plaintiff has expended time consulting with his attorneys as a result of Monterey's unfair and harassing actions.

227.    Plaintiff was unduly disrupted and harassed Monterey's unlawful attempts to collect the Subject Debt.

228.    Monterey's phone harassment operation and illegal collection activities in violation of the TCPA have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity.

229.    Monterey's phone calls wasted Plaintiff's time.

230.    Monterey's phone calls caused Plaintiff aggravation.

231.   Monterey's phone calls caused Plaintiff emotional distress, anxiety, loss of concentration.

232.   Monterey's conduct caused Plaintiff emotional distress, anxiety, loss of concentration.

233.   Monterey's phone calls to Plaintiff diminished the value and utility of Plaintiff's telephone equipment and telephone subscription services, debilitating Plaintiff's voicemail capacity, the wear and tear caused to his cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

234.   Monterey, through its agents, representatives, subsidiaries, third-party contractors, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

235.   Pursuant to 47 U.S.C. § 227(b)(3)(B), Monterey is liable to Plaintiff for a minimum of  $500 for each unlawful called placed by or through an ATDS.

236.   Plaintiff estimates that Monterey called with an ATDS no less than 50 times.

237.   Pursuant to Section 227(b)(3)(B), Plaintiff is entitled to $500 for each unlawful phone call for a recovery of $25,000.00.

238.   As a debt collector which recognizes the application of the FDCPA, Monterey knew or should have known that its practices in relation to calling debtors with an ATDS after the debtor has revoked any purported consent is conduct that violates the TCPA.

239.   On information and belief, Monterey continued to employ unlawful TCPA practices to increase profits.

240.    On information and belief, Monterey's unlawful TCPA practices allow it to collect more monies at the expense of people like Plaintiff.

241.    On information and belief, Monterey's unlawful TCPA practices allow it to collect more monies from people like Plaintiff that thereafter places Monterey in an unfair competitive stance from law-abiding debt collectors.

242.    Pursuant to 47 U.S.C. § 227(b)(3)(C), Monterey's willful and knowing violations of the TCPA triggers this Honorable Court's discretion to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

243.    Pursuant to Section 227(b)(3)(C), Plaintiff is entitled to $1,500 for each unlawful phone call for a total recovery of $75,000.00.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully prays this Honorable Court for the following relief:

    a.  Declare Defendant Monterey's phone calls to Plaintiff to be violations of the TCPA;

    b.  Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

    c.  Enjoining Defendant Monterey from further contacting Plaintiff; and

    d.  Awarding any other relief as this Honorable Court deems just and appropriate.

**Count X – Class Action Claim for Monterey's Violations of the TCPA for Pre-Recorded Messages**

244.    Plaintiff realleges the above paragraphs as though fully set forth herein.

245.    Monterey violated Section 227 (b)(1)(A)(iii) of the TCPA by calling Plaintiff's cellular telephone number and playing pre-recorded or artificial voice messages when Plaintiff answered calls without Plaintiff's prior consent.

246.    Monterey violated Section 227 (b)(1)(A)(iii) of the TCPA by calling Plaintiff's cellular telephone number and placing pre-recorded or artificial voice messages into the

voicemail box associated with Plaintiff's cellular telephone without Plaintiff's prior consent.

247.   Between May 2019 and the present day, Monterey violated Section 227 (b)(1)(A)(iii) of the TCPA by playing numerous pre-recorded voice messages on Plaintiff's cellular phone when he answered Monterey's calls.

248.   Between May 2019 and the present day, Monterey violated Section 227 (b)(1)(A)(iii) of the TCPA by placing numerous pre-recorded voice messages into the voicemail box associated with Plaintiff's cellular phone.

249.   Any prior consent, if any, was revoked by Plaintiff's revocation. Specifically, Plaintiff sent Monterey the May 6th Dispute Letter.

250.   On information and belief, during the past four years, Monterey violated the TCPA by playing hundreds of pre-recorded voice messages on the cellular phones of persons alleged to owe a debt that was being collected by Monterey.

251.   On information and belief, during the past four years, Monterey played hundreds of pre-recorded voice messages on the cellular phones of persons alleged to owe a debt that was being collected by Monterey.

252.   On information and belief, during the past four years, Monterey violated the TCPA on numerous occasions by placing hundreds of pre-recorded voice messages into the voicemail box associated with the cellular phones of persons alleged to owe a debt that was being collected by Monterey without the consent of the persons being called by Monterey.

253.   On information and belief, during the past four years, Monterey violated the TCPA on numerous occasions by placing hundreds of pre-recorded voice messages into the voicemail box associated with the cellular phones of persons alleged to owe a

debt that was being collected by Monterey after the persons receiving the messages had revoked any consent previously provided by them.

254.    On information and belief, any prior consent, if any, was revoked by verbal and written methods of revocation.

255.    Therefore, Monterey knew that its calls to the cellular telephones of putative class members were unwelcome and illegal.

256.    Monterey's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

257.    Plaintiff has expended time consulting with his attorneys as a result of Monterey's unfair and harassing actions.

258.    Plaintiff was unduly disrupted and harassed by Monterey's unlawful attempts to collect the Subject Debt.

259.    Monterey's illegal collection activities through the unlawful transmission or pre-recorded voice messages in violation of the TCPA have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity.

260.    Monterey's pre-recorded voice messages wasted Plaintiff's time.

261.    Monterey's pre-recorded voice messages caused Plaintiff aggravation.

262.    Monterey's pre-recorded voice messages caused Plaintiff emotional distress, anxiety, loss of concentration.

263.    Monterey's unlawful conduct caused Plaintiff emotional distress, anxiety, loss of concentration.

264.    Monterey's unlawful pre-recorded voice messages to Plaintiff diminished the value and utility of Plaintiff's telephone equipment and telephone subscription services, debilitating Plaintiff's voicemail capacity, the wear and tear caused to his

cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

265.   As pled above, in relation to Plaintiff, the putative class members were similarly harmed by Monterey's pre-recorded messages.

266.   Plaintiff's claims and damages are typical of the class he proposes to represent, which is defined as:

**No Consent Class**

All persons with Texas based area codes who heard pre-recorded voice messages on their cellular phones when they answered phone calls or received pre-recorded voice messages in their associated voicemail boxes where Monterey's records demonstrate that these persons never provided Monterey or any agent or company directly affiliated with Monterey consent to play or deliver pre-recorded voice messages.

**Revocation of Consent Class**

All persons with Texas based area codes who heard pre-recorded voice messages on their cellular phones when they answered phone calls or received pre-recorded voice messages in their associated voicemail boxes where Monterey's records demonstrate that these persons revoked any prior consent to receive recorded voice messages from Monterey.

*The time period for the above classes is four years prior to the filing of this class action.*

267.   The facts, law and methods satisfy elements of typicality and commonality and demonstrate that a class action is a superior method of litigating the claims of absent class members.

268.   Plaintiff will be an adequate class member, and his FDCPA claims do not render him unqualified to represent class members in relation to a TCPA class action.

269.   Plaintiff's counsel is an experienced and qualified class action attorney who has spent nearly 20 years litigating TCPA class actions.

270.   Monterey, through its agents, representatives, subsidiaries, third-party contractors, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

271.   Pursuant to 47 U.S.C. § 227(b)(3)(B), Monterey is liable to Plaintiff for a minimum of $500 for each unlawful called placed by or through an ATDS.

272.   Plaintiff estimates that Monterey called with an ATDS no less than 50 times.

273.   Pursuant to Section 227(b)(3)(B), Plaintiff is entitled to $500 for *each unlawful pre-recorded voice message played on his cellular phone upon him answering* for a total recovery of $25,000.00.

274.   Pursuant to Section 227(b)(3)(B), Plaintiff is entitled to $500 for *each unlawful pre-recorded voice message placed in the voice mail of his cellular phone* for a total recovery of $25,000.00.

275.   Pursuant to 47 U.S.C. § 227(b)(3)(B), Monterey is liable to the putative class members for a minimum of $500 for each unlawful call placed by or through an ATDS.

276.   As a debt collector which recognizes the application of the FDCPA, Monterey knew or should have known that its practices in relation to calling debtors with an ATDS after the debtor has revoked any purported consent is conduct that violates the TCPA.

277.   On information and belief, Monterey continued to employ unlawful TCPA practices to increase profits.

278.   On information and belief, Monterey's unlawful TCPA practices allow it to collect more monies at the expense of people like Plaintiff.

279.   On information and belief, Monterey's unlawful TCPA practices allow it to collect more monies from people like Plaintiff and this places Monterey in an unfair competitive stance from law-abiding debt collectors.

280.   Pursuant to 47 U.S.C. § 227(b)(3)(C), Monterey's willful and knowing violations of the TCPA triggers this Honorable Court's discretion to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

281.   Pursuant to Section 227(b)(3)(C), Plaintiff is entitled to $1,500 for *each unlawful pre-recorded voice message played on his cellular phone upon him answering* for a total recovery of $75,000.00.

282.   Pursuant to Section 227(b)(3)(C), Plaintiff is entitled to $1,500 for *each unlawful pre-recorded voice message placed in the voice mail of his cellular phone* for a total recovery of $75,000.00.

283.   Pursuant to 47 U.S.C. § 227(b)(3)(C), Monterey's willful and knowing violations of the TCPA may result in the imposition of treble damages for the putative class members.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully prays this Honorable Court for the following relief:

   a.   Declare Defendant Monterey's phone calls to Plaintiff to be violations of the TCPA;

   b.   Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

   c.   Awarding Plaintiff costs and reasonable attorney fees;

   d.   Enjoining Defendant Monterey from further contacting Plaintiff; and

   e.   Awarding any other relief as this Honorable Court deems just and appropriate.

**Count XI – Individual claims vs. Villa for Violations of the TCPA For ATDS Calls**

284.   Plaintiff realleges the above paragraphs as though fully set forth herein.

285.   Villa repeatedly placed or caused to be placed calls to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") without Plaintiff's prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

286.   The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

287.   Upon information and belief, based on Villa's lack of prompt human response and the playing of pre-recorded voice messages during the phone calls in which Plaintiff answered, Villa used an ATDS to place calls to Plaintiff's cellular telephone.

288.   Further, because Villa left pre-recorded voice messages in a voicemail box assigned to Plaintiff's cellular telephone number, it is plausible that Villa used an ATDS to cause the pre-recorded voice messages in a voicemail box assigned to Plaintiff's cellular telephone number.

289.   Upon information and belief, the ATDS employed by Villa transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

290.   Villa violated the TCPA by placing or causing to be placed numerous phone calls to Plaintiff's cellular phone between February 2019 and the present day, using an ATDS without his prior consent.

291.   Any prior consent, if any, was revoked by Plaintiff's verbal revocation.

292.   Therefore, Villa knew that its calls to Plaintiff's cellular telephone were unwelcome and illegal.

293.   Villa's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

294.   Plaintiff has expended time consulting with his attorneys as a result of Villa's unfair and harassing actions.

295.   Plaintiff was unduly disrupted and harassed Villa's unlawful attempts to collect the Subject Debt.

296.   Villa's phone harassment operation and illegal collection activities in violation of the TCPA have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity.

297.   Villa's phone calls wasted Plaintiff's time.

298.   Villa's phone calls caused Plaintiff aggravation.

299.   Villa's phone calls caused Plaintiff emotional distress, anxiety, loss of concentration.

300.   Villa's conduct caused Plaintiff emotional distress, anxiety, loss of concentration.

301.   Villa's phone calls to Plaintiff diminished the value and utility of Plaintiff's telephone equipment and telephone subscription services, debilitating Plaintiff's voicemail capacity, the wear and tear caused to his cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

302.   Villa, through its agents, brands, representatives, subsidiaries, third-party contractors, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

303.   Pursuant to 47 U.S.C. § 227(b)(3)(B), Villa is liable to Plaintiff for a minimum of $500 for each unlawful called placed by or through an ATDS.

304.   Plaintiff estimates that Villa called with an ATDS no less than 100 times.

305.    Pursuant to Section 227(b)(3)(B), Plaintiff is entitled to $500 for each unlawful phone call for a recovery of $50,000.00.

306.    Villa knew or should have known that its practices in relation to calling Plaintiff with an ATDS after he revoked any purported consent is conduct that violates the TCPA.

307.    On information and belief, Villa continued to employ unlawful TCPA practices to increase profits.

308.    On information and belief, Villa's unlawful TCPA practices allow it to collect more monies at the expense of people like Plaintiff.

309.    On information and belief, Villa's unlawful TCPA practices allow it to collect more monies from people like Plaintiff that thereafter places Villa in an unfair competitive stance from law-abiding companies.

310.    Pursuant to 47 U.S.C. § 227(b)(3)(C), Villa's willful and knowing violations of the TCPA triggers this Honorable Court's discretion to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

311.    Pursuant to Section 227(b)(3)(C), Plaintiff is entitled to $1,500 for each unlawful phone call for a total recovery of $150,000.00.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully prays this Honorable Court for the following relief:

      a.  Declare Defendant Villa's phone calls to Plaintiff to be violations of the TCPA;

      b.  Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

      c.  Enjoining Defendant Villa from further contacting Plaintiff; and

      d.  Awarding any other relief as this Honorable Court deems just and appropriate.

**Count XII – Class Based Pre-Recorded Message Claims for Villa's Violations of the TCPA for**

312.    Plaintiff realleges the above paragraphs as though fully set forth herein.

313.    Villa violated Section 227 (b)(1)(A)(iii) of the TCPA by causing calls to be placed to Plaintiff's cellular telephone number and playing pre-recorded or artificial voice messages when Plaintiff answered calls without Plaintiff's prior consent.

314.    Villa violated Section 227 (b)(1)(A)(iii) of the TCPA by causing calls to be placed to Plaintiff's cellular telephone number and placing pre-recorded or artificial voice messages into the voicemail box associated with Plaintiff's cellular telephone without Plaintiff's prior consent.

315.    Between February 2019 and the present day, Villa violated Section 227 (b)(1)(A)(iii) of the TCPA by playing numerous pre-recorded voice messages on Plaintiff's cellular phone when he answered Villa's calls.

316.    Between February 2019 and the present day, Villa violated Section 227 (b)(1)(A)(iii) of the TCPA by placing numerous pre-recorded voice messages into the voicemail box associated with Plaintiff's cellular phone.

317.    Any prior consent, if any, was revoked by Plaintiff's verbal revocation.

318.    On information and belief, during the past four years, Villa violated the TCPA by playing hundreds of pre-recorded voice messages on the cellular phones of persons alleged to owe a debt to Villa.

319.    On information and belief, during the past four years, Villa played hundreds of pre-recorded voice messages on the cellular phones of persons alleged to owe a debt to Villa.

320.    On information and belief, during the past four years, Villa violated the TCPA on numerous occasions by placing hundreds of pre-recorded voice messages into

the voicemail box associated with the cellular phones of persons alleged to owe a debt to Villa without the consent of the persons being called by Villa.

321.   On information and belief, during the past four years, Villa violated the TCPA on numerous occasions by placing hundreds of pre-recorded voice messages into the voicemail box associated with the cellular phones of persons alleged to owe a debt to Villa after the persons receiving the messages had revoked any consent previously provided by them.

322.   On information and belief, any prior consent, if any, was revoked by verbal and written methods of revocation.

323.   Therefore, Villa knew that its calls to the cellular telephones of putative class members were unwelcome and illegal.

324.   Villa's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

325.   Plaintiff has expended time consulting with his attorneys as a result of Villa's unfair and harassing actions.

326.   Plaintiff was unduly disrupted and harassed by Villa's unlawful attempts to collect the Subject Debt.

327.   Villa's illegal collection activities through the unlawful transmission or pre-recorded voice messages in violation of the TCPA have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity.

328.   Villa's pre-recorded voice messages wasted Plaintiff's time and caused Plaintiff aggravation.

329.   Villa's repeated unlawful pre-recorded voice messages caused Plaintiff emotional distress, anxiety, loss of concentration.

330.   Villa's pre-recorded voice messages to Plaintiff diminished the value and utility of Plaintiff's telephone equipment and telephone subscription services, debilitating Plaintiff's voicemail capacity, the wear and tear caused to his cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

331.   As pled above, in relation to Plaintiff, the putative class members were similarly harmed by Villa's pre-recorded messages.

332.   Plaintiff's claims and damages are typical of the class he proposes to represent, which is defined as:

**No Consent Class**

All persons with Texas based area codes who heard pre-recorded voice messages on their cellular phones when they answered phone calls or received pre-recorded voice messages in their associated voicemail boxes where Villa's records demonstrate that these persons never provided Villa or any agent, brand or company directly affiliated with Villa consent to play or deliver pre-recorded voice messages.

**Revocation of Consent Class**

All persons with Texas based area codes who heard pre-recorded voice messages on their cellular phones when they answered phone calls or received pre-recorded voice messages in their associated voicemail boxes where Villa's records demonstrate that these persons revoked any prior consent to receive recorded voice messages from Villa.

*The time period for the above classes is four years prior to the filing of this class action.*

333.   The facts, law and methods satisfy elements of typicality and commonality and demonstrate that a class action is a superior method of litigating the claims of absent class members.

334.   Plaintiff will be an adequate class member, and his FDCPA claims do not render him unqualified to represent class members in relation to a TCPA class action.

335.    Plaintiff's counsel is an experienced and qualified class action attorney who has spent nearly 20 years litigating TCPA class actions.

336.    Villa, through its agents, brand, representatives, subsidiaries, third-party contractors, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

337.    Pursuant to 47 U.S.C. § 227(b)(3)(B), Villa is liable to Plaintiff for a minimum of $500 for each unlawful called placed by or through an ATDS.

338.    Plaintiff estimates that Villa called him with an ATDS no less than 100 times.

339.    Pursuant to Section 227(b)(3)(B), Plaintiff is entitled to $500 for *each unlawful pre-recorded voice message played on his cellular phone upon him answering* for a total recovery of $50,000.00.

340.    Pursuant to Section 227(b)(3)(B), Plaintiff is entitled to $500 for *each unlawful pre-recorded voice message placed in the voice mail of his cellular phone* for a total recovery of $50,000.00.

341.    Pursuant to 47 U.S.C. § 227(b)(3)(B), Villa is liable to the putative class members for a minimum of $500 for each unlawful call placed by or through an ATDS.

342.    Villa knew or should have known that its practices in relation to calling class members with an ATDS after the class members have revoked any purported consent is conduct that violates the TCPA.

343.    On information and belief, Villa continued to employ unlawful TCPA practices to increase profits.

344.    On information and belief, Villa's unlawful TCPA practices allow it to collect more monies at the expense of people like Plaintiff.

345.   On information and belief, Villa's unlawful TCPA practices allow it to collect more monies from people like Plaintiff and this places Villa in an unfair competitive stance from law-abiding companies.

346.   Pursuant to 47 U.S.C. § 227(b)(3)(C), Villa's willful and knowing violations of the TCPA triggers this Honorable Court's discretion to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

347.   Pursuant to Section 227(b)(3)(C), Plaintiff is entitled to $1,500 for *each unlawful pre-recorded voice message played on his cellular phone upon him answering* for a total recovery of $150,000.00.

348.   Pursuant to Section 227(b)(3)(C), Plaintiff is entitled to $1,500 for *each unlawful pre-recorded voice message placed in the voice mail of his cellular phone* for a total recovery of $150,000.00.

349.   Pursuant to 47 U.S.C. § 227(b)(3)(C), Villa's willful and knowing violations of the TCPA may result in the imposition of treble damages for the putative class members.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully prays this Honorable Court for the following relief:

   a.   Declare Defendant Villa's phone calls to Plaintiff to be violations of the TCPA;

   b.   Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

   c.   Awarding Plaintiff costs and reasonable attorney fees;

   d.   Enjoining Defendant Villa from further contacting Plaintiff; and

   e.   Awarding any other relief as this Honorable Court deems just and appropriate.

## Count XIII - Monterey's Violations of Texas Debt Collection Act

350.   Plaintiff realleges the above paragraphs as though fully set forth herein.

351.     The TDCA, pursuant to Tex. Fin. Code Ann. §392.302(4), states that "a debt collector may not oppress, harass, or abuse a person by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."

352.     Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. §392.001(1).

353.     The alleged Subject Debt is a "debt," "consumer debt" as defined by Tex. Fin. Code Ann. §392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

354.     Monterey is a "debt collector" " and a "third party debt collector" as defined by Tex. Fin. Code Ann. §392.001(6) and (7).

355.     Monterey violated the TDCA when it continuously called Plaintiff's cellular telephone after receiving Plaintiff's May 6th Dispute Letter and after Plaintiff demanded that Monterey cease calling him.

356.     Monterey's repeated behavior of steadily calling Plaintiff's cellular telephone after knowing that it must cease collection efforts was oppressive, harassing, and abusive.

357.     Monterey's frequent contacts were made with the hope that Plaintiff would submit to the harassing behavior and ultimately make a payment on the Subject Debt.

358.     The regularity and volume of calls, shows that Monterey willfully ignored Plaintiff's May 6th Dispute Letter and demand  with the intent of annoying and harassing him.

359.     Furthermore, Monterey called Plaintiff's cellular telephone at least 50 times after receiving Plaintiff's May 6th Dispute Letter and without properly validating the Subject Debt or identifying the current creditor.

360.    Placing such voluminous calls in short succession constitutes conduct causing a telephone to ring repeatedly or continuously with the intent to annoy, abuse, and harass Plaintiff into making payment in violation of the TDCA.

361.    Upon receiving Plaintiff's May 6th Dispute Letter, Monterey had sufficient reason to be aware that it should stop its harassing campaign of collection phone calls.

362.    Nevertheless, Monterey consciously chose to continue placing calls to Plaintiff's cellular telephone.

363.    Monterey's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

364.    Plaintiff has expended time consulting with his attorneys as a result of Monterey's annoying, abusive, and harassing actions.

365.    Plaintiff was unduly disrupted and harassed by Monterey's unlawful attempts to collect the Subject Debt.

366.    Monterey's phone harassment operation and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity.

367.    Monterey's phone calls wasted Plaintiff's time.

368.    Monterey's phone calls caused Plaintiff aggravation.

369.    Monterey's phone calls caused Plaintiff emotional distress, anxiety, loss of concentration.

370.    Monterey's conduct caused Plaintiff emotional distress, anxiety, loss of concentration.

371.    Monterey's phone calls to Plaintiff diminished the value and utility of Plaintiff's telephone equipment and telephone subscription services, debilitating Plaintiff's voicemail capacity, the wear and tear caused to his cellular telephone, the loss

of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully requests that this Honorable Court:

    a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    b.  Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. §392.403(a)(1);

    c.  Award Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. §392.403(a)(2);

    d.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

    e.  Award Plaintiff costs and reasonable attorney fees as provided under Tex. Fin. Code Ann. §392.403(b) ; and

    f.  Award any other relief as the Honorable Court deems just and proper.

**Count XIV - Villa's Violations of Texas Debt Collection Act**

372.    Plaintiff realleges the above paragraphs as though fully set forth herein.

373.    Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. §392.001(1).

374.    The alleged Subject Debt is a "debt," "consumer debt" as defined by Tex. Fin. Code Ann. §392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

375.    Villa is a "debt collector" as defined by Tex. Fin. Code Ann. §392.001(6).

376.    The TDCA, pursuant to Tex. Fin. Code Ann. §392.302(4), states that "a debt collector may not oppress, harass, or abuse a person by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."

377.    Villa violated the TDCA when it continuously called Plaintiff's cellular telephone after Plaintiff demanded that it cease contacting him.

378.    Villa's repeated behavior of steadily calling Plaintiff's cellular telephone after knowing that it must cease collection efforts was oppressive, harassing, and abusive.

379.    Villa's frequent contacts were made with the hope that Plaintiff would submit to the harassing behavior and ultimately make a payment on the Subject Debt.

380.    The regularity and volume of calls, shows that Villa willfully ignored Plaintiff's demand that it cease contacting him with the intent of annoying and harassing him.

381.    Furthermore, Villa called Plaintiff's cellular telephone at least 100 times after Plaintiff demanded such calls stop.

382.    Placing such voluminous calls in short succession constitutes conduct causing a telephone to ring repeatedly or continuously with the intent to annoy, abuse, and harass Plaintiff into making payment in violation of the TDCA.

383.    Upon by told to stop calling Plaintiff, Villa had sufficient reason to be aware that it should stop its harassing campaign of collection phone calls.

384.    Nevertheless, Villa consciously chose to continue placing calls to Plaintiff's cellular telephone.

385.    Villa's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

386.    Plaintiff has expended time consulting with his attorneys as a result of Villa's annoying, abusive, and harassing actions.

387.    Plaintiff was unduly disrupted and harassed by Villa's unlawful attempts to collect the Subject Debt.

388.   Villa's phone harassment operation and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity.

389.   Villa's phone calls wasted Plaintiff's time.

390.   Villa's phone calls caused Plaintiff aggravation.

391.   Villa's phone calls caused Plaintiff emotional distress, anxiety, loss of concentration.

392.   Villa's phone calls to Plaintiff diminished the value and utility of Plaintiff's telephone equipment and telephone subscription services, debilitating Plaintiff's voicemail capacity, the wear and tear caused to his cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

**WHEREFORE**, Plaintiff DAVID S. RAY respectfully requests that this Honorable Court:

    a.   Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    b.   Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. §392.403(a)(1);

    c.   Award Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. §392.403(a)(2);

    d.   Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

    e.   Award Plaintiff costs and reasonable attorney fees as provided under Tex. Fin. Code Ann. §392.403(b) ; and

    f.   Award any other relief as the Honorable Court deems just and proper.

**Plaintiff demands trial by jury.**             Dated 10/31/2019

Respectfully submitted, on behalf of

Plaintiff DAVID S. RAY, individually,
and as the representative of a class
of similarly situated persons

/s/ Alexander J. Taylor
Alexander J. Taylor
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 581-5456 telephone
ataylor@sulaimanlaw.com